**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BRIAN SIMMONS,                          :
a/k/a Omar A. Johnson,                  :
                                        :      Civil Action No. 10-4570 (JAP)
                Plaintiff,              :
                                        :
                v.                      :      **OPINION**
                                        :
JON DOE, ADMINISTRATOR,                 :
et al.,                                 :
                                        :
                Defendants.             :

**APPEARANCES:**

Plaintiff pro se
Brian Simmons
55 Montrose Street
Newark, NJ

**PISANO**, District Judge

        Plaintiff Brian Simmons, also known as Omar A. Johnson, was

a prisoner confined at New Jersey State Prison in Trenton, New

Jersey, when he filed this action pursuant to 42 U.S.C. § 1983,

alleging violations of his constitutional rights.

        At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who

is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's

Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that he was tried in public, in violation

of his rights under the Fifth, Eighth, and Fourteenth Amendments

to the U.S. Constitution.

Plaintiff also alleges that:

> I also complained about a chip being inserted or
> injected inside my body being connected to the public
> eye on the internet being exploited with sick pictures
> of children and solar rays giving me brain cancer.

(Complaint, ¶ 6.)

Finally, Plaintiff alleges that his projected release date

is incorrect.[1]  In support of this contention, Plaintiff

submitted to this Court, in November 2010, a copy of an amended

judgment, dated June 2, 2010, which granted Plaintiff 350 days of

gap time credits with respect to a 3-year sentence imposed on

Plaintiff in June 2008.  Plaintiff did not provide copies of any

of the other criminal judgments pursuant to which he was

confined, nor did he otherwise explain his contention of the

proper release date.

_____

[1] It appears that Plaintiff has now been released.  The New
Jersey Department of Corrections Inmate Locator reflects that
Plaintiff was released on June 22, 2011.  Also, the return
address on Plaintiff's recent communications with the Court is a
street address in Newark, New Jersey, confirming that he is no
longer confined.

Plaintiff names as defendants Administrator Jon Doe, New Jersey Department of Corrections Commissioner Jon Doe, the Department of Corrections of Mercer County,[2] and the State of New Jersey.  He seeks release[3] and monetary damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

---

[2] The Complaint contains no factual allegations regarding the Department of Corrections of Mercer County.  Accordingly, all claims against this entity will be dismissed with prejudice.

[3] The request for release must be brought as a petition for writ of habeas corpus following exhaustion of state remedies and has, in any event, become moot.

in the light most favorable to the plaintiff."  Morse v. Lower

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis

either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

325 (1989) (interpreting the predecessor of § 1915(e)(2), the

former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  Deutsch v. United

States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading

requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and

plain statement of the claim showing that the pleader is entitled

to relief."  A complaint must plead facts sufficient at least to

"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d

218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;

the statement need only 'give the defendant fair notice of what

the ... claim is and the grounds upon which it rests.'" Erickson

v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106
> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.
>
> The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  Id. at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:
>
> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>       (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>       (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."[4]

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

---

[4] It appears that the claims asserted here are not properly joined.  Because of the disposition of the individual claims, however, it is not necessary to address this issue.

III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of <u>respondeat</u> <u>superior</u>.  <u>See</u> <u>City of</u>
<u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.</u>
<u>New York City Department of Social Services</u>, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); <u>Natale v.</u>

Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.   ANALYSIS

A.   Claims Against the State of New Jersey

Plaintiff names as defendants the State of New Jersey, the Jon Doe Administrator of New Jersey State Prison, and the Jon Doe Commissioner of the Department of Corrections.

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Title 28 Sections 1915(e)(2)(B)(iii) and 1915A(b)(2) require
this Court to dismiss this action if it "seeks monetary relief
from a defendant who is immune from such relief."

In addition, neither states, nor governmental entities that
are considered arms of the state for Eleventh Amendment purposes,
nor state officers sued in their official capacities for money
damages are persons within the meaning of § 1983.  Will v.
Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10
(1989); Grabow v. Southern State Correctional Facility, 726
F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of
Corrections is not a person under § 1983).

For the foregoing reasons, all damages claims against the
State of New Jersey and against the John Doe Administrator and
Jon Doe Commissioner defendants in their official capacities must
be dismissed without prejudice for lack of jurisdiction.

B.   The "Public Trial" Claim

Plaintiff alleges that he was tried in public, in violation
of his rights under the Fifth, Eighth, and Fourteenth Amendments
to the U.S. Constitution.

Contrary to Plaintiff's contentions, the right to a "public
trial" is explicitly guaranteed by the Sixth Amendment to the
Constitution and that guarantee is made applicable to the states
through the Due Process Clause of the Fourteenth Amendment.  See,
e.g., Argersinger v. Hamlin, 407 U.S. 25 (1972); In re Oliver,

333 U.S. 2567 (1948).  A public trial does not violate any constitutional rights.  The deficiency in this claim cannot be corrected by amendment and it will be dismissed with prejudice.

C.    The Claim Regarding Plaintiff's Bodily Integrity

As noted above, Plaintiff alleges that a "chip" was inserted into his body and connected to the internet, exploiting him with sick pictures of children and solar rays, and giving him brain cancer.

Pursuant to § 1915(e), "a court may dismiss claims as factually frivolous only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'  As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  Denton v. Hernandez, 504 U.S. 25, 33 (1992) (quoting Nietzke v. Williams, 490 U.S. 319, 325-28 (1989)).

Plaintiff's claims regarding the insertion of a chip into his body, connecting him to the internet, and giving him brain cancer fall into the category of "fanciful," "fantastic," and "delusional."  These claims could not be resurrected by amendment.

D.    The Extended Confinement Claim

Plaintiff alleges that he was held in confinement beyond the end of his term.  He alleges that, in 2008 and 2009, he grieved about the calculation of his commutation credits, and was told by a social worker to raise his concern with the Classification Committee.  Plaintiff alleges that the Classification Committee responded that the calculation of his sentence was correct. Plaintiff alleges that he wrote to the warden and Classification Committee in 2010, but they responded to him that the calculation of his sentence was correct.  He alleges that the Courts of Hudson County and the Public Defender sent copies of an unidentified document to unidentified persons on an unspecified date, so that his dates would be clear.  Finally, in November 2010, Plaintiff provided to this Court a copy of the first page of the June 2, 2010, amended judgment in one of his several convictions, reflecting - apparently for the first time - an award of 350 days gap time credit.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and

wanton infliction of pain contrary to contemporary standards of

decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).

The Court of Appeals for the Third Circuit has held that

imprisonment "beyond one's term" may give rise to a claim for

"cruel and unusual punishment" under the Eighth Amendment.  See

Sample v. Diecks, 885 F.2d 1099, 1107-12 (3d Cir. 1989).  The

Court first held that there could be "no doubt" that imprisonment

"beyond one's term" constitutes punishment within the meaning of

the Eighth Amendment.  885 F.2d at 1108 (citing Hutto v. Finney,

437 U.S. 678, 685 (1978) and Haygood v. Younger, 769 F.2d 1350,

1354 (9th Cir. 1985), cert. denied, 478 U.S. 1020 (1986)).  The

Court then proceeded to evaluate the circumstances under which

incarceration beyond one's term constitutes "cruel and unusual"

punishment.

> One class of "unnecessary and wanton" wrongs, and the
> one most relevant here, is those wrongs "'totally
> without penological justification.'"
>
> ...
>
> A harm could be thought of as penologically
> justified in another sense, however.  The
> administration of a system of punishment entails an
> unavoidable risk of error.  In the case of punishment
> through imprisonment, those errors may result in harms
> to inmates.  Elimination of the risk of error in many
> instances would be either literally impossible or
> unfeasible because prohibitively costly.  Thus
> unforeseeable accidents or inadvertent mistakes are a
> necessary cost of any prison system; they therefore are
> not "repugnant to the conscience of mankind," and do
> not violate the eighth amendment.

16

The degree to which a harm is "unnecessary" in the sense of being unjustified by the exigencies of prison administration will affect the state-of-mind requirement a plaintiff must meet to demonstrate that a particular prison official violated the eighth amendment.  ...

... Accordingly, we hold that there can be no eighth amendment liability in this context in the absence of a showing of deliberate indifference on the part of the defendant to whether the plaintiff suffers an unjustified deprivation of his liberty.  ...

To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted.  Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

Among the circumstances relevant to a determination of whether the requisite attitude was present are the scope of the official's duties and the role he or she has played in the everyday life of the prison.  Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it.  A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter.  On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present.

<u>Sample</u>, 885 F.2d at 1108-10 (citations omitted).

The Court of Appeals for the Third Circuit has also held that detention beyond one's term may give rise to a claim for deprivation of liberty without due process under the Fourteenth Amendment if "a policymaking official establishes a constitutionally inadequate state procedure for depriving people of a protected interest and someone is thereafter deprived of such an interest."  Sample, 885 F.2d at 1114.  Applying the balancing test of Mathews v. Eldridge, 424 U.S. 319, 335 (1976) to determine what process is due a prisoner facing detention beyond his term, the Court held, "procedural due process requires that an inmate with a challenge to the calculation of his release date promptly be listened to by someone having authority to decide the challenge or pass it on for further review and decision."  Sample, 885 F.2d at 1115.  See also Haygood v. Younger, 769 F.2d at 1356 ("due process in this case required the state to provide Haygood with a meaningful hearing at a meaningful time").

Here, Plaintiff's conclusory allegations do not even make clear whether he is contending that his sentence calculation was erroneous because of an error counting commutation time or gap time.  To the extent it is based on an error in counting gap time, he has provided documentation that his sentence was amended to reflect the gap time credits only in June of 2010, after at least some of his internal challenges to the calculation of his

sentence.  Certainly, he has alleged no facts that would suggest that either the Administrator or Commissioner was deliberately indifferent to any error in the calculation of his sentence, either by their activities with respect to the calculation of his sentence or with respect to the creation of a system to respond to Plaintiff's concerns, especially where it is clear that he was told to discuss this error with the Classification Committee. Indeed, at one point in the Complaint Plaintiff refers to the error as a "computer error."  (Complaint, ¶ 4.b.)  Moreover, Plaintiff nowhere alleges that he (or someone acting on his behalf) provided to the Classification Committee (or any of the named defendants) a copy of his amended judgment.  Nor does Plaintiff explain the nature of the error that he alleges was made or his calculation of the correct release date.

Plaintiff has failed to state a claim for confinement beyond the expiration of his term, in violation of the Eighth Amendment, with respect to the named defendants.  This claim will be dismissed without prejudice; and Plaintiff may move to re-open this matter if he can correct the deficiencies of his claim as described herein.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. § and 1915A(b)(1), for failure

19

to state a claim.[5]  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim for unconstitutional confinement beyond the expiration of his term, the Court will grant Plaintiff leave to move to re-open and to file an amended complaint with respect to that claim only.[6]

An appropriate order follows.

/s/ JOEL A. PISANO
Joel A. Pisano
United States District Judge

Dated: September 23, 2011

---

[5] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ...  The dispositive inquiry is whether the district court's order finally resolved the case."  Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted).  In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.